IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GAYLA BRATTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20-CV-04108-WJE ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

## ORDER

Pending before the Court is the government's Motion for Summary Judgment ("Motion"), and suggestions in support thereof. (Docs. 30, 31). Plaintiff Gayla Bratton has filed suggestions in opposition (Doc. 38), to which the United States has timely replied (Doc. 43). The issue is now ripe for consideration. For the reasons that follow, the Motion shall be denied.

### I. BACKGROUND

This medical malpractice and wrongful death case arises from medical care that decedent Richard Bratton received at the Harry S. Truman Memorial Veterans' Hospital ("VA Hospital") in Columbia, Missouri. (Doc. 31, ¶ 1; Doc. 38, ¶¶ 4-5). Mrs. Bratton, his surviving wife, claims that medical providers at the VA Hospital negligently failed to timely diagnose and treat a cancerous lesion, causing injury that resulted in Mr. Bratton's death. (Doc. 1, ¶¶ 31-42).

On March 23, 2016, Mr. Bratton's primary care physician, Dr. Julie Stansfield, ordered a computerized tomography ("CT") scan of Mr. Bratton's abdomen to evaluate a suspected hernia. (Doc. 31, ¶ 2; Doc. 38, ¶ 6). The CT scan revealed "heavily calcified" nodules located inferior to the liver and posterolateral to the right kidney that the radiologist described as "[possibly] related to dropped gallstones after [his gallbladder was removed]." (Doc. 38-6, pp. 2-3).

This was the first of many scans of Mr. Bratton's developing lesion. (*See* Docs. 38-9, 38-12, 38-19, 38-24, 38-27, 38-30, 38-35). Images of the lesion were obtained in May 2016, July 2017, November 2017, January 2018, February 2018, April 2018, and July 2018. (Docs. 38-9, 38-12, 38-19, 38-24, 38-27, 38-30, 38-35). Medical providers variously referred to the growth as a cyst, a cystic lesion, a lesion, and a mass. (*See* Docs. 38-9, 38-12, 38-19, 38-24, 38-27, 38-30, 38-35). Dr. Michael R. O. Aro, a VA Hospital radiologist, described this abnormal area of tissue as a "cystic lesion with calcifications along the wall," also noting its growth over time. (Docs. 38-9, 38-12, 38-19, 38-24, 38-27, 38-30, 38-35).

An aspiration biopsy was performed on August 16, 2017, revealing fluid "[n]egative for malignant cells." (Doc. 38-16, p. 1). At that time, medical providers did not attempt to diagnose the lesion. (Doc. 38, ¶¶ 36-39).

On December 29, 2017, Dr. Stansfield referred Mr. Bratton to Dr. Kevin Staveley-O'Carroll, a surgical oncologist at the VA Hospital, who devised a treatment plan for Mr. Bratton after reviewing his records. (Doc. 31, ¶¶ 21-22; Doc. 38, ¶¶ 49-54). The plan involved obtaining more images of Mr. Bratton's lesion and presenting his case at the University of Missouri Health Care's General Multi-Disciplinary Conference and the Veterans' Affairs Conference to get other medical experts' opinions on the lesion. (Doc. 31, ¶ 22; Doc. 38, ¶ 53). Dr. Staveley-O'Carroll represented in his deposition testimony that he presented Mr. Bratton's case at the conferences in January and May 2018, but there is no other documentation in the record regarding the content of these presentations or the recommendations that resulted. (Doc. 38, ¶¶ 62-71, 126-31).

In January 2018, after magnetic resonance imaging ("MRI"), Dr. Aro suggested that Mr. Bratton consider obtaining another biopsy of the lesion. (Doc. 38-24, p. 3). Dr. Aro also noted that the calcifications did "not appear significantly changed from the older CT[s]." (*Id.*; Doc. 38,

¶ 59). He did not review images from a CT scan conducted in 2008 because they were no longer accessible on the hospital's server, but he did observe that there was no reference of the lesion in the notes from the 2008 CT. (Doc. 38-24, p. 3).

Mr. Bratton had multiple follow-up appointments. (Doc. 31, ¶¶ 36, 48, 60; Doc. 38, ¶¶ 72, 101, 139). Dr. Staveley-O'Carroll memorialized an appointment on January 19, 2018, by noting that Mr. Bratton "often worries that the cyst could be malignant . . . [but the lesion is p]ossibly [a] reaction to gallstones spilled at [the] time of [his gallbladder removal]." (Doc. 38-45, pp. 1, 6). Mr. Bratton scheduled a surgery to remove the lesion in August 2018. (Doc. 31, ¶ 68; Doc. 38, ¶ 141; Doc. 38-34, p. 1). However, an MRI in July 2018 revealed the lesion had grown significantly. (Doc. 38, ¶¶ 143-45; Doc. 38-35, pp. 2-3). After also reviewing the previously inaccessible 2008 CT scan, providers no longer believed the lesion resulted from spilled gallstones and Mr. Bratton's surgery was rescheduled for July 16, 2018. (Doc. 38, ¶¶ 146-56; Doc. 38-36, pp. 7-10).

On July 16, 2018, Dr. Staveley-O'Carroll removed the lesion. (Doc. 31, ¶ 79; Doc. 38, ¶ 157). A pathology report revealed that the lesion was cancerous. (Doc. 31, ¶ 80; Doc. 38, ¶ 159). After the surgery, Mr. Bratton sought treatment with Dr. Benjamin Powers at the University of Kansas Medical Center, who felt that chemotherapy and radiation were not viable treatment options for this type of cancer. (Doc. 1, ¶ 29). After the surgery, another CT scan revealed that the cancer had metastasized to Mr. Bratton's liver and lungs. (*Id.*, ¶ 30). Mr. Bratton died on April 10, 2019. (Doc. 31, ¶ 81; Doc. 38, ¶ 160). His death certificate listed the cancer as his underlying cause of death. (Doc. 31, ¶ 82; Doc. 38, ¶ 161).

On June 23, 2020, Mrs. Bratton filed suit, alleging Wrongful Death in Count I and Loss Chance of Recovery or Survival in Count II, pursuant to the Federal Tort Claims Act ("FTCA"). (Doc. 1, ¶¶ 31-42). On September 4, 2020, the United States filed its Answer. (Doc. 10). On

September 30, 2021, Mrs. Bratton identified Dr. Norman Bloom as a retained medical expert and disclosed his written reports. (Docs. 23, 23-1, 23-2). Dr. Bloom opines that the physicians at the VA Hospital violated the medical standard of care because: (1) they did not establish a definitive diagnosis for the lesion in a timely manner; (2) they performed an aspiration biopsy rather than an image guided core biopsy; and (3) they erroneously assumed that the lesion was spilled gallstones. (*See* Docs. 23-1, 23-2). The United States subsequently filed the instant Motion on March 4, 2022. (Doc. 30).

## II. STANDARD OF REVIEW

"Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Green Plains Otter Tail, LLC v. Pro-Env't., Inc.*, 953 F.3d 541, 545 (8th Cir. 2020) (citing Fed. R. Civ. P. 56(c)). "A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Dryer v. NFL*, 814 F.3d 938, 941-42 (8th Cir. 2016) (citing *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996)). "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial." *Id.* at 942 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Green Plains Otter Tail, LLC*, 953 F.3d at 545 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

## III. ANALYSIS

**A. Dr. Bloom's opinions are sufficient to establish a *prima facie* case for medical negligence.**

The United States argues that Dr. Bloom's opinions are not sufficient to establish that medical providers at the VA Hospital deviated from the standard of care under Missouri law.[1] (Doc. 31, pp. 20-26). Mrs. Bratton counters that Dr. Bloom provides specific examples of how the medical providers violated the standard of care. (Doc. 38, pp. 59-64).

Under Missouri law, "a medical malpractice claim requires: (1) breach of the standard of care and (2) causation."[2] *Huffman v. United States*, No. 2:20-CV-04079-NKL, 2021 WL 6689722, at *8 (W.D. Mo. Oct. 28, 2021) (citing *Jackson v. United States*, No. 1:18-CV-9-ACL, 2019 WL 7343442, at *9 (E.D. Mo. Dec. 30, 2019)). To demonstrate a breach of the standard of care, the plaintiff must prove that the defendant physician failed "to exercise 'the degree of care, skill and proficiency which is commonly exercised by the ordinarily skillful, careful and prudent physician engaged in similar practice under the same or similar conditions.'" *Shaffer v. United States*, 769 F. Supp. 310, 311 (E.D. Mo. Apr. 15, 1991) (quoting *Yoos v. Jewish Hosp. of St. Louis*, 645 S.W.2d 177, 183 (Mo. Ct. App. 1982)). Generally, expert testimony must establish that the defendant deviated from the medical standard of care. *Huffman*, 2021 WL 6689722, at * 9 (citing *McLaughlin v. Griffith*, 220 S.W.3d 319, 322-23 (Mo. Ct. App. 2007)). "An expert doctor's opinion, however, must be based upon an established standard of care and not upon a personal standard." *Boehm v. Pernoud*, 24 S.W.3d. 759, 762 (Mo. Ct. App. 2000) (citing *Dine v. Williams*, 830 S.W.2d 453, 457

---

[1] Missouri law governs these claims. *See Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005) ("The FTCA waives federal sovereign immunity and grants [federal] courts jurisdiction over a certain category of claims against the United States only to the extent that a private person, under like circumstances, would be liable to the plaintiff under the substantive law of the state where the alleged wrongful conduct took place (in this case, Missouri)." (citing *Washington v. Drug Enf't Admin.*, 183 F.3d 868, 873 (8th Cir. 1999)).

[2] Causation requires the plaintiff to establish that his or her injury would not have occurred "but for" the conduct of the medical practitioners. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862-63 (Mo. banc 1993). In the instant Motion, the United States does not contend that Mrs. Bratton failed to establish causation.

(Mo. Ct. App. 1992)). For example, the Court in *Huffman* held that the plaintiff failed to demonstrate that the defendant doctor violated the standard of care when the plaintiff's expert cited "no specific examples of the purported failure to employ the appropriate practices or of the proper practices themselves," but only gave conclusory opinions regarding what the defendant doctors should have done. *Huffman*, 2021 WL 6689722, at * 11.

Here, Dr. Bloom cites specific examples of how the medical providers at the VA Hospital breached the standard of care when treating Mr. Bratton. First, Dr. Bloom opines that medical providers breached the standard of care by failing to excise the lesion, even after two independent images showed the lesion's growth. (Doc. 38-42, pp. 6-7). Second, Dr. Bloom opines that medical providers breached the standard of care because an aspiration biopsy cannot definitively diagnose a lesion like Mr. Bratton's. (*Id.*, p. 6). Instead, "[t]he proper diagnosis could have been made had image guided core biopsies been performed rather than an aspiration biopsy[,] which is the standard of care for diagnosing these lesions." (*Id.*, p. 7). Third, Dr. Bloom asserts that the lesion could not have resulted from spilled gallstones during a gallbladder removal surgery thirty years earlier. (*Id.*, p. 9-10). Not only was the location of the lesion anatomically inaccessible during the gallbladder removal surgery, but CT scans prior to 2016 showed no abnormalities in the area where the lesion was discovered. (*Id.*). Viewing the facts in the light most favorable to Mrs. Bratton, the Court denies summary judgment because she sufficiently alleges, through Dr. Bloom's opinions, that the medical providers at the VA Hospital breached the standard of care. *See Huffman*, 2021 WL 6689722, at *9-11.

### B. Federal Rule of Civil Procedure 26(a)(2)(B)(i) does not prohibit Dr. Bloom's testimony at trial.

The United States seeks to exclude any testimony Dr. Bloom did not disclose in his written opinions pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i). (Doc. 31, pp. 26-27). The

United States further asserts that Dr. Bloom's opinions are unsupported, so they must be excluded under Rule 26. (*Id.*). Mrs. Bratton argues that Dr. Bloom's opinions are supported by sufficient reason and Rule 26 does not limit Dr. Bloom's testimony at this procedural stage. (Doc. 38, pp. 64-65).

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires expert witnesses to provide a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "The purpose of the written reports is not to replicate every word that the expert might say on the stand, but is instead intended to convey the substance of the expert's opinion, so that the opponent will be ready to rebut, to cross-examine, and to offer competing expert testimony if necessary." *Cooper v. Wullweber*, No. C10-1032, 2012 WL 1904806, at *5 (N.D. Iowa May 25, 2012) (quotation omitted). "Where a party fails to make a timely disclosure, Federal Rule of Civil Procedure 37(c)(1) provides the [presiding] court with the authority to exclude the late-disclosed materials or to fashion a lesser penalty than total exclusion." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 771 (8th Cir. 2020).

As previously discussed, this Court finds that Dr. Bloom's opinions are sufficiently supported. Dr. Bloom's opinions are not conclusory, subjective conceptions of what Mr. Bratton's healthcare providers "should" have done. *See Huffman*, 2021 WL 6689722, at *9-11. Instead, Dr. Bloom's opinions outline specific examples of how the medical providers at the VA Hospital breached the standard of care. (*See* Doc. 38-42, pp. 6-10). The Court agrees that Rule 26 limits experts' testimony to the opinions asserted in their written reports. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). However, the rule generally is employed in motions to strike, where experts' deposition testimony significantly differs from opinions asserted in their written reports. *See Cooper*, 2012 WL 1904806, at *5; *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1059-60 (D.

Minn. 2012); *Serverside Grp. Ltd. v. Tactical 8 Techs., LLC*, 985 F. Supp. 2d 900, 907 (N.D. Iowa 2013).  Given that the United States has not yet deposed Dr. Bloom, there is no indication that Dr. Bloom will testify to any opinions other than those in his written report.  The Court also notes that Rule "26(a)(2)(B) does not limit an expert's testimony simply to reading his report . . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Davenport v. Charter Commc'ns*, No. 4:12-CV-00007-AGF, 2016 WL 3743187, at *4 (E.D. Mo. July 13, 2016) (quotation omitted).  The Court declines to exclude the testimony of Dr. Bloom under Rule 26.

### C. Dr. Bloom's opinions sufficiently demonstrate Dr. Staveley-O'Carroll's alleged negligence.

The United States argues that Dr. Staveley-O'Carroll cannot be found liable because he did not treat Mr. Bratton until December 2017, after the initial scans and biopsy were taken, which are the actions that Dr. Bloom opines breached the standard of care. (Doc. 31, pp. 28-29).  Mrs. Bratton maintains that Dr. Bloom's opinions support the allegation that Dr. Staveley-O'Carroll breached the standard of care because Dr. Staveley-O'Carroll had established a patient-provider relationship with Mr. Bratton that mandated ongoing treatment. (Doc. 38, pp. 65-69).

Here, Dr. Staveley-O'Carroll devised a treatment plan for Mr. Bratton and had regular appointments with Mr. Bratton. (Doc. 31, ¶ 21; Doc. 38, ¶¶ 49-54, 77-81, 91-98).  These actions resulted in a duty of care. *See Corbet v. McKinney*, 980 S.W.2d 166, 169 (Mo. Ct. App. 1998) ("The liability of a physician who is consulted on a case by a patient's treating or family physician generally depends on whether the physician undertakes to examine, diagnose, or treat the patient, or merely undertakes to advise the patient's treating physician as to general patient care.") (citation omitted).  Moreover, Dr. Bloom's opinions are pertinent to Dr. Staveley-O'Carroll's alleged negligence.  Dr. Bloom opines that Mr. Bratton's lesion should have been diagnosed sooner. (Doc.

38-42, pp. 6-7). Dr. Staveley-O'Carroll began seeing Mr. Bratton in December 2017 and, viewing the evidence in a light most favorable to Mrs. Bratton, Dr. Staveley-O'Carroll did not make any significant attempt to diagnose Mr. Bratton. (Doc. 38, ¶¶ 74-85). Moreover, Dr. Bloom's opinion that relying on an aspiration biopsy breached the standard of care is relevant to Dr. Staveley-O'Carroll, as he could have ordered an image guided core biopsy at any time. (*See id.*, ¶¶ 81-83). Dr. Bloom's opinion regarding the scientific impossibility of the lesion resulting from spilled gallstones is also pertinent to Dr. Staveley-O'Carroll's alleged negligence, as Dr. Staveley-O'Carroll did not recognize that it would have been nearly impossible for spilled gallstones to have been located where the lesion was found. (Doc. 38-42, pp. 9-10). The Court finds that Dr. Bloom's opinions, when viewed in the light most favorable to Mrs. Bratton, are sufficient to allege Dr. Staveley-O'Carroll's negligence for purposes of the instant Motion and denies summary judgment on this issue.

### D. This Court has subject matter jurisdiction over Mrs. Bratton's claims.

Mrs. Bratton alleges that the VA Hospital was negligent because it lost Mr. Bratton's 2008 CT images. (Doc. 38, pp. 69-71). The United States contends that this Court does not have subject matter jurisdiction over this institutional negligence claim under the FTCA because it did not lose the 2008 CT images. (Doc. 31, pp. 29-32). And even if it did, there is no legal authority requiring it to maintain these records. (*Id.*).

"The FTCA waives federal sovereign immunity . . . only to the extent that a private person, under like circumstances, would be liable to the plaintiff under the substantive law of the state where the alleged wrongful conduct took place (in this case, Missouri)." *Green Acres Enters., Inc.*, 418 F.3d at 856 (citing *Washington*, 183 F.3d at 873). "Thus, to state a claim that is cognizable under the FTCA, a claim against the government must have a 'private analogue'; in other words,

the claim must be such that a similarly situated private party would be liable for the same conduct in Missouri." *Id.* (citations omitted). Pursuant to Missouri law, "[p]atient records remaining under the care, custody and control of the licensee shall be maintained by the licensee of the board, or the licensee's designee, for a minimum of seven years from the date of when the last professional service was provided." Mo. Ann. Stat. § 334.097.2 (West 2021).

At this procedural stage, the Court must view the evidence in a light most favorable to Mrs. Bratton, so this Court accepts as true that Mr. Bratton's 2008 CT images were no longer accessible on the hospital's server in 2018. (*See* Doc. 38, ¶¶ 59-61). Medical providers were still actively treating Mr. Bratton at the VA Hospital in 2018, so seven years had not elapsed since "the date of when the last professional service was provided." (*Id.*, ¶ 157; Mo. Ann. Stat. § 334.097.2 (West 2021)). The Court will deny summary judgment on this issue because it finds that it still has subject matter jurisdiction under the FTCA as there is a "private analogue" requiring the VA Hospital to maintain Mr. Bratton's records and Mrs. Bratton has sufficiently alleged that the United States failed to do so.

## IV. CONCLUSION

The Motion for Summary Judgment (Doc. 30) is DENIED as set forth herein.

IT IS, THEREFORE, ORDERED.

Dated this 8th day of May, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge